**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALPHONSE CHARLES BASSENE, *Petitioner*, | No. 07-75022 |
| | Agency No. A076-389-204 |
| v. | |
| ERIC H. HOLDER, JR., Attorney General, *Respondent*. | ORDER AND AMENDED OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 12, 2012—Pasadena, California

Filed July 23, 2013
Amended September 23, 2013

Before: Harry Pregerson and William A. Fletcher, Circuit
Judges, and Lawrence L. Piersol, Senior District Judge.[*]

Order;
Opinion by Judge Pregerson

---

[*] The Honorable Lawrence L. Piersol, Senior District Judge for the U.S.
District Court for the District of South Dakota, sitting by designation.

**SUMMARY****

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' decision denying on adverse credibility grounds asylum, withholding of removal, and protection under the Convention Against Torture to a native and citizen of Senegal.

The panel held that the Board erred by drawing an adverse inference from the low level of detail about persecution provided in petitioner's mistakenly filed N-400 citizenship application, which was not designed to elicit information about persecution. The panel further held that substantial evidence did not support the Board's finding of inconsistencies between petitioner's N-400 application and his later filed I-589 asylum application. The panel remanded for further consideration taking petitioner's testimony as credible.

### COUNSEL

Nene Thiaba Mour Samb (argued), Samb and Associates, LLC, Minneapolis, Minnesota, for Petitioner.

Marion E. Guyton (argued), Trial Attorney, Office of Immigration Litigation Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The Opinion filed on July 23, 2013 is amended as follows:

On slip opinion page 9, line 18, remove the following text:

> <We agree with the IJ's decision to treat the one-year filing requirement for asylum as running from the day Bassene's J-1 visa expired. We also agree with the IJ's decision to treat Bassene's mistakenly filed N-400 citizenship application as a quasi-asylum application and we find that it was timely filed within the one-year period.>

On page 9, line 18, insert the following text:

> <The IJ also decided to treat Bassene's mistakenly filed N-400 citizenship application as a quasi-asylum application.>

## OPINION

PREGERSON, Circuit Judge:

Alphonse Charles Bassene ("Bassene"), a native and citizen of Senegal, petitions for review of the Board of Immigration Appeals ("BIA") decision denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

Bassene sought lawful status in the United States by mistakenly filing an N-400 citizenship application instead of filing an I-589 asylum application. He attached a one-page statement to his citizenship application explaining that he had expected to see questions asking if he had been persecuted for his ethnicity or political beliefs in Senegal, because these were the reasons he was seeking refuge in the United States. After Bassene's N-400 citizenship application was denied, an Immigration and Naturalization Services Officer directed him to file an asylum application. In his I-589 asylum application, Bassene answered questions about the political and ethnic persecution he experienced in great detail. The answers in Bassene's I-589 application were consistent with the testimony he gave at his removal hearing. The Immigration Judge ("IJ") found that Bassene was not credible, however, because Bassene had not supplied the same level of detail about persecution when he filled out his mistakenly filed N-400 citizenship application. The BIA affirmed.

We hold that substantial evidence does not support the BIA's adverse credibility finding. The IJ should not have drawn an adverse inference from the low level of detail about persecution provided in Bassene's N-400 citizenship application, which is not designed to elicit information about persecution. The BIA erred when it adopted the IJ's flawed reasoning. The BIA also erred when it found that Bassene was not credible on the ground that his citizenship and asylum applications were inconsistent. We have jurisdiction under 8 U.S.C. § 1252. We grant the petition for review, vacate the BIA's adverse credibility finding, and remand to the BIA to determine whether Bassene is eligible for asylum.

## BACKGROUND

### A. Bassene's Removal Proceedings

The facts of Bassene's case compel us to conclude that the BIA's adverse credibility finding is not supported by substantial evidence. At his August 29, 2006 removal hearing, Bassene testified about the ethnic and political persecution he experienced while living in Senegal. Bassene grew up in southern Senegal's Casamance region, in the town of Zinguinchor. Bassene testified that if he returns to Senegal he will be persecuted because of his Diola ethnicity and his affiliation with the armed wing of the Movement of the Democratic Forces of the Casamance ("MFDC"). The armed wing of the MFDC is a separatist organization that demands independence for southern Senegal's Casamance region and has been in an armed conflict with the Senegalese military since the early 1980s.

### 1. *Bassene's Diola ethnicity*

Bassene and his family are Diola, a minority ethnic group in Senegal. Bassene is recognizable as Diola because of his family name. From 1990 to 1997, Bassene attended the University of Dakar on a government scholarship. Bassene testified that in the capital city of Dakar, the Diola people are not well-respected because they have a reputation for being instigators of rebellion. Bassene contends that he was a top university student studying Spanish and was set to receive a scholarship to study abroad in Spain, but was replaced with a non-Diola student at the last minute and had to remain in Senegal.

## 2. *Bassene's affiliation with the MFDC*

In 1986, when Bassene was eighteen years old, his family was forcefully recruited into financially supporting the MFDC. Six gunmen from the movement's armed wing intruded into his family's home in the late evening hours. After Bassene's mother and sisters were moved to another location within Bassene's family's home, the gunmen demanded that Bassene and his father join the MFDC to help gain greater prosperity for the region. Bassene's father initially refused. The gunmen said if Bassene's father wanted to live, his family needed to be involved with the MFDC in some way. Bassene's family opted to contribute about $6 per month to the MFDC. Bassene's mother and two sisters, who still live in Senegal, continue to pay this contribution under threat of retaliation. The Bassenes were issued a family card to demonstrate their affiliation with the armed wing of the MFDC. The MFDC also has a distinct and legal political wing. Bassene testified that he is sympathetic to the peaceful objectives of the MFDC's political wing. He once participated in a large event organized by the political wing of the MFDC in 1992, whose purpose was to restore peace in Senegal.

Several of Bassene's family members have been killed or have lost their homes because of the conflict between the armed wing of the MFDC and the Senegalese government. Two of Bassene's male cousins joined the armed wing of the MFDC in 1991. After a Senegalese military raid in 1993, the area where the men were camping was burned, they were arrested by the military, and they were never heard from again. Bassene's aunt's village was burned and she lost her home as a result of the conflict between the Senegalese government and the MFDC's armed wing. As of 2001, over

a hundred civilians have been extrajudicially executed or "disappeared by" the Senegalese military, and dozens have been deliberately or arbitrarily killed by the armed wing of the MFDC.

In 1992, Bassene was detained, arrested, and beaten by the Senegalese military because of his affiliation with the MFDC's armed wing. Bassene was traveling home from school on the Thursday before the Easter holiday. While passing through a checkpoint, Bassene was detained and searched by the Senegalese military. After the soldiers found Bassene's MFDC card, they escorted Bassene to a small building for questioning. Bassene told the soldiers that he was a student and that he had been forced to carry the MFDC card.

The soldiers took Bassene to jail and placed him in a cell with five other men. The soldiers beat Bassene and made derogatory comments about his Diola heritage. There was no running water in the cell. It was not until the following morning, on Friday, that the men were given some food and allowed to go to the bathroom. The soldiers questioned Bassene for an additional six hours that day.

On Saturday morning at 2:00 a.m., the soldiers placed a call to the University of Dakar. The University confirmed that Bassene was a full-time student. Bassene paid a $30 fine and was subsequently released. At the time of his release, Bassene's face was bleeding and swollen from being pushed into a wall by a soldier. The soldier escorting Bassene out of jail threatened him, saying the next time he was caught by the military, "that will be the end of it."

Bassene fears that if he returns to Senegal he will be arrested and interrogated regarding his whereabouts for the past nine years.  Bassene also believes that if he returns to Senegal, the MFDC's armed wing will attempt to recruit him again.  He does not believe the Senegalese government will be able to protect him from the MFDC's armed wing.

### 3.  *Bassene's immigration proceedings in the United States*

Bassene was legally admitted to the United States on November 27, 1997, on a J-1 cultural exchange visa.  Bassene came to the United States from Senegal to participate in an internship program in hotel management.  His visa expired a year-and-a-half later on June 29, 1999.  Bassene wanted to stay in the United States legally.  He feared returning to Senegal because he had been arrested, detained, beaten, and threatened by the Senegalese military.  An American college student who was an acquaintance of Bassene's advised Bassene to apply for United States citizenship.  As a result, Bassene mistakenly believed that he could obtain lawful status in the United States based on his fear of persecution in Senegal by filing an N-400 citizenship application.

On November 1, 1999, Bassene filed an N-400 citizenship application.  The N-400 citizenship application requests information from the applicant setting forth his or her eligibility for citizenship, including lawful permanent residency status and compliance with immigration laws. Question 15 asked if Bassene had been arrested for "breaking or violating any law or ordinance."  Bassene checked a box indicating that he had never been arrested for those reasons. Part 9 of the citizenship application asked Bassene to list his affiliations with "organization[s]."  Bassene did not disclose

his membership in the armed wing of the MFDC because he was forced to be a member of the organization.

Bassene attached a one-page statement to his N-400 citizenship application to convey that he feared returning to Senegal because he expected to see a question about persecution in his home country. In the one-page statement, Bassene elaborated, in general terms, on the turbulent situation in his home region of Casamance. Bassene's N-400 application for citizenship was denied on July 20, 2000, and Bassene requested a hearing on the denial.

On February 15, 2001, Bassene met with an Immigration and Naturalization Service officer. The officer conducted a *de novo* review of Bassene's N-400 citizenship application and found Bassene ineligible for naturalization. The officer told Bassene that he could apply for asylum. The officer gave Bassene an I-589 asylum application; a list of the countries whose nationals were eligible for asylum, withholding of removal, or CAT relief; and a list of free legal services.

On March 8, 2001, Bassene submitted his I-589 asylum application that he completed without the assistance of counsel. In his asylum application, Bassene provided detailed accounts of the night in 1986 when his family was forced to join the armed wing of the MFDC. Bassene also described his 1992 arrest by the Senegalese military.

Several years later, on August 29, 2006, Bassene appeared before the IJ in San Diego at his removal hearing.

Bassene conceded removability and asked for asylum, withholding of removal, and relief under CAT.[1]

## B. The IJ Grants the Exceptional Circumstances Exception for Asylum

At the removal hearing, the Department of Homeland Security ("DHS") argued that Bassene was ineligible for asylum because he filed his application after the one-year period designated by statute. *See* 8 U.S.C. § 1158(a)(2)(B). Bassene submitted his citizenship application almost two years after he arrived in the United States, and about six months after his J-1 visa expired. Bassene argued that he was exempted from the one year filing period under the "extraordinary circumstances" exception because he filed the N-400 citizenship application less than six months after his J-1 visa expired. *See* 8 U.S.C. § 1158(a)(2)(D). The IJ agreed. The IJ also decided to treat Bassene's mistakenly filed N-400 citizenship application as a quasi-asylum application.

## C. The IJ Finds that Bassene is Not Credible

At the removal hearing on August 29, 2006, the IJ asked Bassene why he had not disclosed that he was arrested by the Senegalese military in the one-page statement he attached to his N-400 citizenship application. Bassene responded: "I was arrested. I don't know why I didn't (indiscernable) but I was." Moments later, the IJ notified Bassene's attorney that

---

[1] We apply pre-REAL ID Act standards because Bassene filed his application for relief on November 1, 1999, which was before May 11, 2005, the effective date of the REAL ID Act. *See Sinha v. Holder*, 564 F.3d 1015, 1021 n.3 (9th Cir. 2009) (applying the pre-REAL ID Act standard).

the biggest problem in Bassene's case was credibility. Bassene's attorney argued that the purpose of the one-page statement attached to the N-400 citizenship application was to "tell our Government that [Bassene] might not be filing the correct form but [Bassene] didn't want to go back to his country." In its closing argument, DHS admitted that Bassene was credible, stating: "The government feels that overall he has been a very credible witness." Nonetheless, DHS declined to stipulate to Bassene's credibility.

## D. The IJ and BIA Decisions

On August 29, 2006, the IJ denied Bassene's claim for asylum, withholding of removal, and relief under CAT. The IJ denied asylum and withholding of removal because he found that Bassene was not credible. The IJ concluded that the one-page statement Bassene attached to the N-400 citizenship application showed that he submitted the application to "convey to the United States Government the basis of his fear to allow him to stay in" the United States. The IJ stated that he was willing to excuse minor omissions from the N-400, but he was not willing to excuse Bassene's omission "that he was arrested and detained for two or three days[,] and mistreated and interrogated by the Senegalese military." The IJ also denied relief under CAT.

The BIA adopted the IJ's adverse credibility finding and also found that Bassene failed to meet his burden of proof for relief. The BIA noted two alleged inconsistencies between Bassene's N-400 citizenship application and his I-589 asylum application: (1) Bassene did not mention his arrest by the Senegalese military and explicitly denied being "arrested, imprisoned, or fined" in his N-400 citizenship application;

and, (2) Bassene "failed to reveal his alleged membership in MFDC" in his N-400 citizenship application.

## STANDARD AND SCOPE OF REVIEW

Credibility determinations are reviewed for substantial evidence. *Rizk v. Holder*, 629 F.3d 1083, 1087 (9th Cir. 2011). Under the substantial evidence standard, an adverse credibility finding is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted). The BIA gives deference to an IJ's credibility finding because the IJ is in the best position to assess the trustworthiness of the applicant's testimony. *See Mendoza Manimbao v. Ashcroft*, 329 F.3d 655, 661–62 (9th Cir. 2003). Where, as here, the BIA summarily affirms an IJ's decision and does not expressly conduct a *de novo* review we may "look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *Ahmed v. Keisler*, 504 F.3d 1183, 1191 (9th Cir. 2007).

## DISCUSSION

## A. The Lack of Detail in Bassene's Mistakenly Filed N-400 Citizenship Application Does Not Support the BIA's Adverse Credibility Finding

The IJ and BIA drew an adverse inference from the omission of Bassene's arrest and detention by the Senegalese military from his N-400 citizenship application. However, the N-400 citizenship application was not designed to elicit information about persecution. "[T]he IJ had no reason to 'expect' to be told of 'persecution and assaults' on [Bassene or his] family" in Bassene's mistakenly filed N-400 citizenship application. *Joseph v. Holder*, 600 F.3d 1235,

1242–43 (9th Cir. 2010) (internal quotation marks omitted) (reversing adverse credibility finding that relied on differences between bond hearing testimony and removal hearing testimony).

In short, the IJ concluded that Bassene was not credible because he did not include evidence of political and ethnic persecution in his N-400 citizenship application, information that would have been relevant had he filed an I-589 application for asylum. That Bassene filed an initial N-400 citizenship application that "was not as complete as might be desired" of an I-589 asylum application "cannot, without more, serve as a basis for a finding of lack of credibility.'" *Smolniakova v. Gonzales*, 422 F.3d 1037, 1045 (9th Cir. 2005) (quoting *Lopez-Reyes v. INS*, 79 F.3d 908, 911 (9th Cir. 1996)) (internal quotation marks omitted). Bassene provided information on the ethnic and political persecution he experienced in Senegal in the I-589 asylum application that he was later instructed to file.

Moreover, the IJ speculated that because Bassene was an educated person, he should have known to mention his arrest and detention by the Senegalese military in his mistakenly filed N-400 citizenship application. But "[s]peculation and conjecture cannot form the basis of an adverse credibility finding." *Shah v. INS*, 220 F.3d 1062, 1071 (9th Cir. 2000). We hold that the lack of detailed information related to an asylum claim provided in a non-asylum proceeding, when consistent with the requirements of the proceeding, cannot on its own result in an adverse credibility finding. We also hold that an IJ may not make an adverse credibility finding based solely on speculation that an asylum applicant should have been capable of providing more detail related to an asylum claim in an earlier non-asylum proceeding.

Bassene filed the N-400 citizenship application *pro se*. We are guided by the principle that "asylum forms filled out by people who are unable to retain counsel should be read charitably, especially when it comes to the absence of a comprehensive and thorough account of all past instances of persecution." *Smolniakova*, 422 F.3d at 1045 (internal quotation marks omitted). We recently stated that "[o]missions [in I-589 asylum applications] are not given much significance because applicants usually do not speak English and are not represented by counsel." *Kin v. Holder*, 595 F.3d 1050, 1056 (9th Cir. 2010). We give Bassene's omission of his arrest and detention even less weight because he completed an N-400 citizenship application, rather than an I-589 asylum application, and properly complied with the requirements set forth in his N-400 citizenship application. The I-589 asylum application would have at least prompted Bassene to provide information on political and ethnic persecution, whereas the N-400 citizenship application did not.

Bassene's mistakenly filed N-400 citizenship application is akin to early-stage asylum proceedings like bond hearings, airport interviews, and asylum interviews. The differences in detail between statements made during less formal proceedings and later formal proceedings may not be used to undermine an applicant's credibility. In *Joseph v. Holder*, for example, we "rejected [an] adverse credibility finding[] that relied on differences between statements a petitioner made during removal proceedings and those made during [a] less formal, . . . unrecorded [bond hearing]." 600 F.3d at 1243. We reasoned that an IJ's credibility finding during a removal hearing may not rely on statements made by the applicant during less formal proceedings. *Id.* at 1244.

In so holding, *Joseph* relied on precedent explaining that airport interviews and asylum interviews do not require the same level of detail as later formal proceedings.  *See Arulampalam v. Ashcroft*, 353 F.3d 679, 688 (9th Cir. 2003) (holding that petitioner's omission during an airport interview of *specific details* of torture that were revealed later at the removal hearing did not support a negative credibility finding); *Singh v. INS*, 292 F.3d 1017, 1021–24 (9th Cir. 2002) (holding that an adverse credibility finding could not rest solely on the fact that an applicant provided *less detail* in his statements at the airport than he did at his subsequent hearing); *see also Singh v. Gonzales*, 403 F.3d 1081, 1087 (9th Cir. 2005) (holding that a *contradiction* between a petitioner's asylum interview, where the interview was not recorded and notes were taken by hand, and removal hearing testimony was not substantial evidence to justify an adverse credibility finding).   The lack of detail in Bassene's mistakenly filed but properly completed N-400 citizenship application, does not on its own undermine Bassene's credibility in his asylum proceeding.

The lack of detail in Bassene's N-400 citizenship application and speculation that Bassene was capable of providing information on political and ethnic persecution does not "bear a legitimate nexus to the [BIA's] finding" that Bassene is not credible.  *Salaam v. INS*, 229 F.3d 1234, 1238 (9th Cir. 2000) (per curiam) (internal quotation marks omitted).

**B. The Purported Inconsistencies between Bassene's N-400 Citizenship Application and His I-589 Asylum Application Do Not Support the BIA's Adverse Credibility Finding**

When taking both of Bassene's applications together, Bassene's N-400 citizenship application was not inconsistent with his I-589 asylum application. The BIA believed that the two applications lacked "sufficient consistency" because Bassene failed to disclose his arrest and detention by the Senegalese military and his forced membership in the MFDC in his N-400 citizenship application. Viewing the purported inconsistencies "in light of all the evidence presented in the case" reveals that the applications were not inconsistent. *Kaur v. Gonzales*, 418 F.3d 1061, 1066 (9th Cir. 2005). In Bassene's N-400 citizenship application, Bassene correctly answered that he had not been arrested for unlawful conduct for "breaking or violating any law or ordinance." Here, Bassene was arrested because the Senegalese military incorrectly identified him as a member of the MFDC's armed wing. Bassene was also truthful in declining to list his forced membership in the MFDC in his N-400 citizenship application. Bassene agreed to carry an MFDC membership card and pay a tax to the MFDC only after six gunmen entered his home and forcefully recruited him and his father.

For these reasons, the claimed inconsistency between the two applications is not supported by substantial evidence. In addition, Bassene appropriately answered his N-400 citizenship application.

## CONCLUSION

The BIA has not evaluated Bassene's eligibility for asylum based on his fear of persecution in Senegal. We grant Bassene's petition for review, vacate the BIA's adverse credibility finding, and remand the case to the BIA for further consideration and investigation in light of our ruling that the petitioner is credible. *Guo v. Ashcroft*, 361 F.3d 1194, 1203–04 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

**PETITION GRANTED; REVERSED and REMANDED.**