**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

APR 21 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JUDE JAFON,<br><br>               Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney<br>General,<br><br>               Respondent. | No. 20-70421<br><br>Agency No. A215-819-819<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 9, 2021[**]
Las Vegas, Nevada

Before:   NGUYEN and BENNETT, Circuit Judges, and HARPOOL,[***] District
Judge. Dissent by Judge BENNETT.

   Petitioner Jude Jafon timely seeks review of the Board of Immigration

Appeals' ("BIA") dismissal of his appeal from an immigration judge's ("IJ")

---

[*] This disposition is not appropriate for publication and is not
precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision
without oral argument.   Fed. R. App. P. 34(a)(2).

denial of relief from removal. Reviewing for substantial evidence, *see Shrestha v. Holder*, 590 F.3d 1034 (9th Cir. 2010), we grant the petition.

1. Substantial evidence does not support the BIA's adverse credibility determination. *See Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016) (holding that we review adverse credibility determinations for substantial evidence). The BIA found that Petitioner testified inconsistently, implausibly, and made material omissions. Our review of the BIA's adverse credibility determination is highly deferential. "[O]nly the most extraordinary circumstances will justify overturning [the] adverse credibility determination." *Shrestha v. Holder*, 590 F.3d at 1041.

Here, the inconsistencies and omissions cited by the BIA principally compared Petitioner's accounts in earlier testimony with later and more formal hearings. But the later accounts were complementary, not contradictory.

For instance, the BIA and IJ faulted Petitioner for making a "glaring" omission: he "did not mention [to CBP] that he had been harmed in Cameroon." That misconstrues the CBP interview. First, Petitioner told CBP he left "because of the war" and also mentioned in the same interview his activities protesting and printing slogans, and that the authorities detained him. CBP asked Petitioner if he had been persecuted, and Petitioner answered "[y]es, because we speak political

2

opinions," linking his harm to protected speech activity. Second, Petitioner adequately explained his abbreviated answers when pressed at the hearing: "Well, I believe I responded to the . . . Officer's questions. He told me that he was not the one to listen to the details of my story and all of the testimony that I should leave them for the Court and for the Judge." That is correct. The purpose of a CBP interview is limited and CBP officers are emphatically directed "*not* [to] ask detailed questions on the nature of the alien's fear of persecution or torture: leave that for the asylum officer. . . . Do not make any evaluation as to the merits of the fear: that is the responsibility of the asylum officer." Inspector's Field Manual at 216.

In *Smolniakova v. Gonzales* 422 F.3d 1037, 1042, 1045 (9th Cir. 2005), we found the IJ's adverse credibility reasoning was flawed and emphasized that the petitioner's asylum application was "not inconsistent with her later, more detailed descriptions." *Id*. at 1045. Similarly, we have stated that "differences in detail between statements made during less formal proceedings and later formal proceedings may not be used to undermine an applicant's credibility." *Bassene v. Holder*, 737 F.3d 530, 537 (9th Cir. 2013) (stating airport and asylum interviews are less formal "early-stage" proceedings). Furthermore, in *Iman v. Barr*, we held an omission in an asylum interview (less formal) compared to later testimony at a

hearing had "no tendency to suggest" the petitioner fabricated the claim. 972 F.3d 1058, 1067 (9th Cir. 2020) (also observing in general that "omissions are less probative of credibility than inconsistencies created by direct contradictions") (citation omitted). Here, the CBP interview was the least formal of any proceeding and was certainly the least focused on gathering details of the claim.

The dissent highlights unremarkable instances of Petitioner providing additional, wholly consistent, details in subsequent interviews or declarations. The additions are not substantial evidence of a lack of credibility. For example, the dissent asserts Jafon "completely failed" to mention to CBP that the military had beat him. But Jafon stated he had been persecuted for his speech activity and detained on that basis. Just 27 days later at the asylum interview, when Jafon still had no attorney or consultant, the agency asked Jafon for the first time to recount the details of his persecution. He stated clearly and with reasonable specificity that he was "arrested, *seriously threatened* and beat[en] . . . they used a machete . . . and my hands were tie[d] behind me and they kicked me." Asylum Interview (emphasis added). He stated the abuse lasted "about a month and they *regularly* beat me." *Id.* Jafon later said that the guards beat him "daily" and threated him specifically with "electric cables." *See Bandari v. INS*, 227 F.3d 1160, 1167 (9th Cir. 2000) ("failure to identify the specific instrument which the police used . . . is

4

the type of omitted detail that cannot form a proper basis of an adverse credibility finding.").

2.   The BIA's additional grounds for its adverse credibility findings are also not supported by substantial evidence.   For example, the BIA agreed with the IJ that Petitioner could not have possibly accomplished so much on November 10, 2016.   But the IJ compressed events into November 10 that Jafon never specifically claimed to have completed that day, writing that he was "contacted to print," "completed the printing," and "distributed" materials all on the same day, Petitioner simply explained the Coffin Revolution started with a November 10 protest, at which time he opened a shop and published protest art at the request of the protest leader.   Petitioner continued to distribute work and became known as protests intensified, until months later police shot Petitioner's colleague and burned down the shop.

And contrary to the IJ and BIA's characterization of Jafon's testimony about his escape from detention, Petitioner did not state all five guards were armed, he stated three were.   Petitioner did not claim other prisoners escaped unharmed, he testified he heard gunshots and did not know the fate of the others.   He did not say he "simply exit[ed]," but that he ran for his life.

3.    The remaining inconsistencies are similarly unsupported by the record or are trivial, and considering the "totality of the circumstances, and all relevant factors," 8 U.S.C. § 1158(b)(1)(B)(iii), we conclude the adverse credibility determination was not supported by substantial evidence.  Accordingly, we grant the petition for review and remand to the agency to assess Jafon's claims on the merits.  *INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (per curiam); *Tekle v. Mukasey*, 533 F.3d 1044, 1055-56 (9th Cir. 2008).

**PETITION GRANTED.**

*Jafon v. Garland*, No. 20-70421

BENNETT, Circuit Judge, dissenting:

The substantial evidence standard is "extremely deferential: 'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003) (quoting 8 U.S.C. § 1252(b)(4)(B)). Indeed, we "*must* deny [a] petition unless [the petitioner] has presented evidence so compelling that no reasonable factfinder could find that he was not credible." *Id.* (emphasis added). I respectfully dissent because a reasonable factfinder could find that Jude Jafon was not credible.

A Customs and Border Patrol ("CBP") officer interviewed Jafon. According to the record, the officer told Jafon: "U.S. law provides protection to certain persons who face persecution, harm or torture upon return to their home country. If you fear or have a concern about being removed from the United States or about being sent home, you should tell me so during this interview because you may not have another chance."[1] During the interview, the officer asked Jafon, "Why did you leave your hometown?" Jafon responded with only, "Because of the war." At

---

[1] The Majority cites one portion of the Inspector's Field Manual. Majority at 3. But in the same section cited by the Majority, the Manual also instructs: "Explain that there is no appeal to this decision and explain that this will be his or her only opportunity to provide any information or state any fear of return or removal that he or she may have." United States Customs and Border Protection Inspector's Field Manual § 17.15. The officer here did just that.

1

no time during this interview did Jafon ever mention that he had been beaten in Cameroon.

One month later, during his credible fear interview, Jafon disclosed that the Cameroonian military had detained him and beaten him daily for one month. He stated that the military had threatened him and beat him with a machete, made him lie on the floor with his hands tied, and kicked him. The interviewer then asked, "Besides what we have already talked about, were you harmed or threatened in any other way?" Jafon responded with only, "[N]o."

Later, in his declaration attached to his asylum application, Jafon stated that the military had beaten him daily with machetes. He added that the military had also threatened him with electrical cables.

The Board of Immigration Appeals ("BIA") identified at least two proper, substantial reasons supporting its adverse credibility determination. First, the BIA found it significant that Jafon had mentioned no alleged beatings during the initial CBP interview. The BIA reasonably found that this omission undermined Jafon's credibility because the later disclosure of daily beatings for one month with a machete substantially bolstered his claims. *See Iman v. Barr*, 972 F.3d 1058, 1068 (9th Cir. 2020) ("[O]missions are probative of credibility to the extent that later disclosures, if credited, would bolster an earlier, and typically weaker, asylum

2

application.").[2]  And the BIA reasonably concluded that the omission was significant because the alleged beatings go to the heart of Jafon's claims.  *Cf. Shrestha v. Holder*, 590 F.3d 1034, 1046–47 (9th Cir. 2010) ("[W]hen an inconsistency is at the heart of the claim it doubtless is of great weight.").

When asked about the omission at the hearing before the immigration judge ("IJ"), Jafon explained that the CBP officer had told him not to provide any details about his story.  But a factfinder would not be compelled to accept this explanation given the CBP officer instructed Jafon that the interview might be his only opportunity to present information and the importance of the omitted information to his claims.[3]  Given the circumstances, I believe a reasonable factfinder could conclude (as the BIA and IJ did here) that someone who had been beaten daily for one month *would* provide such information during the interview.  And because

---

[2] The Majority cites *Iman* for the proposition that "an omission in an asylum interview (less formal) compared to later testimony at a hearing ha[s] 'no tendency to suggest' the petitioner fabricated the claim."  Majority at 3–4.  But in *Iman* we were specifically discussing "collateral or ancillary omission[s]," which in that case involved harm to third parties, not the petitioner.  972 F.3d at 1067–68.  And we cited cases like *Shrestha v. Holder*, 590 F.3d 1034 (9th Cir. 2010), distinguishing "trivial inconsistencies" from "attempts by the applicant to enhance his claims of persecution."  *Iman*, 972 F.3d at 1068.  The omissions here were neither collateral, ancillary, nor trivial, and the immigration judge and the BIA were entitled to find that the later descriptions by Jafon *were* attempts to enhance his claims of persecution.

[3] The Majority reaches a contrary conclusion by relying on only one part of the Inspector's Field Manual.  Majority at 3.  The Majority's analysis ignores the other circumstances that show the agency's refusal to accept Jafon's explanation was reasonable.

Jafon completely failed to mention that the military had beat him, the later disclosure of daily beatings for one month were "not 'details,' but [were] new allegations that [told] a 'much different—and more compelling—story of persecution than [the initial CBP interview].'" *Silva–Pereira v. Lynch*, 827 F.3d 1176, 1185 (9th Cir. 2016) (quoting *Zamanov v. Holder*, 649 F.3d 969, 974 (9th Cir. 2011)).

Second, the BIA adopting the IJ's decision, found that Jafon gave inconsistent accounts of the alleged beatings. During his credible fear interview, Jafon stated that his beatings involved kicking and a machete, and he affirmatively stated that he had not been threatened or harmed in any other way. But he later stated in his declaration that the military had also threatened him with electrical cables. This statement conflicted with his prior statement that he had not been threatened in any other way.[4] Thus, the BIA reasonably concluded that Jafon had provided inconsistent accounts of the alleged beatings. And it was proper for the BIA to give the inconsistent statements great weight because the alleged beatings were central to his claim of persecution. *See Shrestha*, 590 F.3d at 1046–47.

---

[4] The Majority concludes that Jafon's later declaration simply provided more details of his claims. Majority at 4. I disagree because a reasonable factfinder could conclude (as the IJ and BIA did here) that Jafon's later statement about electrical cables in his declaration actually conflicted with his prior statement that he had not been threatened in any other way.

4

The BIA's adverse credibility determination is supported by substantial evidence, as the record does not compel a contrary conclusion. A reasonable factfinder could conclude that Jafon was not credible based on his material omissions and inconsistent statements.[5] Therefore, I respectfully dissent.

---

[5] I would reject Jafon's argument that the BIA erred by dismissing his assertion that he was unable to obtain corroborating evidence given the conditions in Cameroon. The BIA reasonably rejected Jafon's contention given that he managed to submit various documents allegedly obtained from Cameroon.

I would also reject Jafon's argument that the BIA erred in denying CAT relief. "An adverse credibility determination is not necessarily a death knell to CAT protection." *Shrestha*, 590 F.3d at 1048. But to reverse the BIA's denial of CAT relief, Jafon must show that his non-discredited evidence compels the conclusion that he will more likely than not be tortured if he returns to Cameroon. *Id.* at 1048–49. The background materials about the conditions in Cameroon, which Jafon points to, describe conflict between the Cameroon government and Anglophone separatists, but they fail to compel a conclusion that Jafon will face any particularized threat of torture in Cameroon. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051–52 (9th Cir. 2008) (per curiam).