**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AI JUN ZHI,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney<br>General,<br>*Respondent*. | No. 10-71591<br><br>Agency No.<br>A099-890-509<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued October 16, 2012
Submitted September 16, 2013
Honolulu, Hawaii

Filed May 16, 2014

Before: Stephen Reinhardt, Sidney R. Thomas,
and Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

## SUMMARY[*]

### Immigration

The panel granted a petition for review of the Board of Immigration Appeals' denial of asylum and withholding of removal.

The panel held that substantial evidence did not support the IJ's adverse credibility determination based on a discrepancy in dates in the documentary evidence, given that other evidence in the record corroborated petitioner's explanation that one of the documents included an incorrect date due to a typographical error.

The panel held that the IJ erred by relying on petitioner's short-lived marriage to a United States citizen to question his credibility because the IJ failed to consider petitioner's explanation for the termination of his marriage, never questioned petitioner about why he entered the United States on a B-1 business visa, rather than a K-1 fiancé visa, and failed to give any consideration to petitioner's testimony that his wife never filed a visa petition for him, which undermined the IJ's speculation and conjecture that petitioner married solely to remain in the country.

The panel held that the IJ also failed to provide petitioner with proper notice and a reasonable opportunity to produce corroborating evidence, as required by *Ren v. Holder*, 648

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

F.3d 1079, 1090-92 (9th Cir. 2011). The panel remanded for further proceedings.

---

**COUNSEL**

Jisheng Li (argued), Honolulu, Hawaii, for Petitioner.

Ethan B. Kanter (argued), Senior Litigation Counsel; Tony West, Assistant Attorney General; Richard M. Evans, Assistant Director; Andrew Jacob Oliveira, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

**OPINION**

PAEZ, Circuit Judge:

Petitioner Ai Jun Zhi, a Chinese citizen, petitions for review of the denial of his application for asylum and withholding of removal. As we explain below, one of the bases for the immigration judge's ("IJ") adverse credibility determination is not supported by substantial evidence and another must be set aside and remanded as a result of legal error. The IJ also failed to provide Zhi with proper notice and a reasonable opportunity to produce corroborating evidence, as required by our opinion in *Ren v. Holder*, 648 F.3d 1079, 1090–92 (9th Cir. 2011). We therefore grant Zhi's petition and remand for further proceedings.

**I.**

Zhi has primarily lived outside of China since 1998, first in Saipan and later in Guam. From 1992 to 2002, Zhi was married to a Chinese citizen, with whom he has two daughters.[1] On August 17, 2005, Zhi entered Guam on a B-1 non-immigrant visa, and married a United States citizen, Shirley Munos Santos, six days later. The couple divorced on December 21, 2006. Santos did not file a visa petition on Zhi's behalf during their marriage.

In 2004, Zhi opened a bookstore in China, which he intended to be a source of income when he returned. His brother-in-law, Hong Zhang, managed the store. Zhi testified that in April 2005, Zhang called Zhi to ask if Zhang's friend, a Falun Gong practitioner, could keep books about Falun Gong in the bookstore. Zhi agreed. Zhi testified that on February 13, 2006, the local police found out about the books and closed the bookstore. The police detained Zhang for two days, but then released him after learning that Zhi owned the bookstore.

Zhi received a phone call from his father the day the police closed the bookstore. Zhi's father told him never to come back to China or contact either of his parents again, and then promptly hung up. The police searched Zhi's parents' home and informed them that if they did not report Zhi upon his return to China, Zhi's parents would bear responsibility for his criminal actions. Zhi also received a call from a friend who told Zhi the police had issued a warrant for Zhi's arrest and had charged him as a Falun Gong cultist.

---

[1] One of Zhi's daughters is a U.S. citizen who lives with him in Guam.

Zhi proffered four letters from family and friends explaining what had happened in more detail and warning him not to return to China. Zhi's friend, Jian Ming, mailed Zhi's mother's letters to avoid detection by undercover Chinese authorities who Zhi's mother believed were monitoring her mail. Ming explained in his own letter that he was afraid to help Zhi and would not do so again. He asked Zhi to avoid further contact with him.

Zhi's mother reported in her two letters that the police closed his bookstore on February 13, 2006. Zhi's sister, however, wrote that police closed the bookstore on February 13, 2005. When asked about the discrepancy at his asylum hearing, Zhi testified that his sister told him during a telephone conversation that she wrote the year down wrong.

In September 2007, Zhi received a notice to appear for removal proceedings. He conceded removability and requested relief in the form of asylum and withholding of removal on the basis of imputed political opinion. The IJ denied Zhi's application on August 27, 2008. In her oral decision, she explained that Zhi did not present credible evidence establishing a well-founded fear of future persecution. Although she relied primarily on the inconsistency concerning the year Zhi's bookstore closed, she explained that the discrepancy in dates was particularly significant in light of the timing of Zhi's "very short-lived marriage to a U.S. citizen," which she interpreted as an "attempt[] to remain in the United States." The IJ also based her decision on Zhi's failure to submit reasonably available corroborating evidence.

The Board of Immigration Appeals ("BIA") affirmed the IJ's decision on April 23, 2010.  Zhi timely appealed.  We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1).

## II.

Where, as here, the BIA adopts the IJ's decision and also contributes its own reasoning to the analysis, we review both decisions.[2]  *Nuru v. Gonzales*, 404 F.3d 1207, 1215 (9th Cir. 2005).

We review factual findings, including adverse credibility decisions, under the deferential substantial evidence standard. *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1312 (9th Cir. 2012).  We may reverse factual determinations only when "any reasonable adjudicator would be compelled to conclude to the contrary" based on the evidence in the record.  8 U.S.C. § 1252(b)(4)(B).  We review de novo questions of law and mixed questions of law and fact.  *Mendoza-Pablo*, 667 F.3d at 1312.

## A.

An asylum applicant bears the burden of establishing his claim through credible evidence.  *See* 8 U.S.C. § 1158(b)(1)(B)(i), (iii).  For applications filed after May 11, 2005, such as Zhi's, the credibility standards set forth in the REAL ID Act apply.  *See* Pub. L. 109-13, Div. B, Title I, § 101(h)(2), 119 Stat. 231 (May 11, 2005).  Although an IJ may base her adverse credibility determination on "any . . .

---

[2] The BIA's three-page order stated, in part, "we affirm the Immigration Judge's legal conclusions for the reasons stated by the Immigration Judge in the August 2008 decision (I.J. at 4–11)."

relevant factor," she must do so in light of "the totality of the circumstances." 8 U.S.C. § 1158(b)(1)(B)(iii); *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010). In other words, the IJ "cannot selectively examine evidence in determining credibility, but rather must present a reasoned analysis of the evidence as a whole." *Tamang v. Holder*, 598 F.3d 1083, 1093 (9th Cir. 2010); *see also Bassene v. Holder*, 737 F.3d 530, 538 (9th Cir. 2013) (stating that an IJ must view "purported inconsistencies in light of all the evidence presented in the case" (internal quotations and citations omitted)). The IJ cannot "cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result," *Shrestha*, 590 F.3d at 1040, and must consider the petitioner's explanation for any inconsistency that is "cited as a factor supporting an adverse credibility determination," *id.* at 1044. Under the REAL ID Act, an IJ may base credibility determinations on factors that do not "go[] to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii); *Ren*, 648 F.3d at 1084 (recognizing abrogation of the Ninth Circuit's "heart of the claim" test). However, an IJ cannot base an adverse credibility determination solely on an "utterly trivial inconsistency" that "under the total circumstances [has] no bearing on a petitioner's veracity." *Shrestha*, 590 F.3d at 1043–44.

The principal basis for the IJ's adverse credibility finding was that Zhi's sister identified the date of the bookstore closure as February 13, 2005, while Zhi and his mother dated the closure on February 13, 2006. The IJ rejected Zhi's explanation that his sister merely "wrote down the year wrong" in her letter. The IJ stated that, while she may otherwise have considered the sister's date a typographical error, she refused to do so here because Zhi only offered his explanation after he was questioned about it on cross-

examination. The IJ characterized the inconsistency as a "major discrepancy" because Zhi relied heavily upon the letters to establish his fear of persecution, and because it was Zhi's sister's husband who ran the bookstore. The BIA agreed, explaining that Zhi's testimony about the closure date was central to his evidence establishing "the circumstances for which the Chinese government allegedly seeks to harm him."

The BIA and IJ ignored critical evidence that undermines the adverse credibility determination. In her oral decision, the IJ rejected Zhi's argument that he had suffered past persecution because of extreme economic deprivation. In doing so, the IJ described the business receipts that Zhi presented as "credible evidence." These receipts include a business license renewal dated December 26, 2005, and twelve additional government-stamped receipts dated between February 13, 2005, and February 13, 2006. The last-dated receipt was from January 31, 2006. These receipts support Zhi's explanation that his sister made a mistake when she dated her letter. They also bolster Zhi's testimony identifying the closure date as February 13, 2006.

In light of this significant record evidence, we conclude that substantial evidence does not support the BIA's determination that the conflict in dates resulted in a legally significant discrepancy in the evidence. In light of the receipts, "no reasonable factfinder," *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992), could have determined that the discrepancy in dates was anything but an "utterly trivial discrepancy" that "under the total circumstances [has] no bearing on [Zhi's] veracity," *see Shrestha*, 590 F.3d at 1043–44. The evidence overwhelmingly supports Zhi's explanation that his sister, in either a slip of pen or a slip of

memory, misstated the year of the closure. Zhi's testimony, his mother's two letters, the fact that his sister stated the same date but a different year, the business license renewal, and the twelve other receipts dated between February 13, 2005 and February 13, 2006, all support Zhi's dating of the bookstore closure and his explanation that his sister made a mistake when she dated her letter. We therefore conclude that substantial evidence does not support the agency's finding that the discrepancy in dates undermines Zhi's credibility.

## B.

Although the IJ relied principally upon the discrepancy in dates to support her decision, she also indicated that Zhi's "very short-lived marriage" to Santos after arriving in Guam was suspect. The IJ concluded that Zhi's marriage to Santos was an "attempt[] to remain in the United States," and found it particularly significant that Zhi had entered Guam on a B-1 non-immigrant visa rather than a K-1 visa.[3]

The IJ made three legal errors in her treatment of Zhi's marriage to Santos. First, the IJ failed to consider Zhi's

---

[3] The applicable federal regulations explain that a B-1 visa is for business purposes and does not lead to status as a lawful permanent resident. 8 C.F.R. § 214.2(b)(1) ("Any B-1 visitor for business . . . may be admitted for not more than one year and may be granted extensions of temporary stay in increments of not more than six months."). A K-1 visa, which an immigrant who plans to marry a U.S. citizen promptly after arrival may acquire, leads to status as a lawful permanent resident. 8 C.F.R. § 214.2(k)(6)(ii) ("Upon contracting a valid marriage to the petitioner within 90 days of his or her admission as a nonimmigrant pursuant to a valid K-1 visa issued on or after November 10, 1986, the K-1 beneficiary and his or her minor children may apply for adjustment of status to lawful permanent resident.").

explanation for why his marriage ended after just sixteen months.**⁴** An IJ must consider and address "[a]ll plausible and reasonable explanations for any inconsistencies" that form the basis of an adverse credibility determination. *Chen v. I.N.S.*, 266 F.3d 1094, 1100 (9th Cir. 2001), *judgment vacated on other grounds*, *sub nom. I.N.S. v. Yi Quan Chen*, 537 U.S. 1016 (2002); *see also Osorio v. I.N.S.*, 99 F.3d 928, 933 (9th Cir. 1996) (explaining that an IJ must "address in a reasoned manner the explanations that [an applicant] offers for . . . perceived inconsistencies"). Insofar as the IJ found the "very short-lived" term of Zhi's marriage to be probative of Zhi's motives for marriage and his overall credibility, it was error

---

**⁴** The IJ's exchange with Zhi about his marriage was limited to the following:

> Q: Did your second wife Shirley, the U.S. citizen, file a visa petition before you divorced?
>
> A: No, she didn't.
>
> Q: Did you state that you married her on August 23, 2005?
>
> A: Yes.
>
> Q: And did you state that the divorce was December 21, 2005?
>
> A: No, that was the year 2006, December 21st, year 2006.
>
> Q: Why did the marriage fail in such a short time?
>
> A: We just were holding different opinions and that causes (sic) the divorce.

to draw an adverse inference without first considering and addressing Zhi's explanation.

Second, although there are multiple possible reasons why Zhi might have entered Guam on a B-1 non-immigrant visa instead of a K-1visa, the IJ never questioned Zhi on the matter. The IJ could not properly base her adverse credibility determination on Zhi's entry visa without first soliciting his explanation for why he entered on a B-1 visa. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1092 (9th Cir. 2009) (holding that the IJ cannot base an adverse credibility determination on a discrepancy without first asking the applicant about it and giving him an opportunity to explain); *Ming Shi Xue v. Bd. of Immigration Appeals*, 439 F.3d 111, 121–22 (2d Cir. 2006) (explaining that, where the IJ chooses to rely on a basis for an adverse credibility determination that is not "plainly obvious or dramatic," the IJ must identify the issue and provide the applicant with an opportunity to offer an explanation). Here, the IJ engaged in speculation about the meaning of Zhi's entry visa instead of probing into the matter to "develop[] a complete and accurate record on which to decide [Zhi's] asylum claims," as was her adjudicatory obligation. *See Ming Shi Xue*, 439 F.3d at 118–19 (citing 8 U.S.C. § 1229a(b)(1)). It is axiomatic that "[s]peculation and conjecture cannot form the basis of an adverse credibility finding, which must instead be based on substantial evidence." *Shah v. I.N.S.*, 220 F.3d 1062, 1071 (9th Cir. 2000); *see also Chawla v. Holder*, 599 F.3d 998, 1004 (9th Cir. 2010) ("[S]peculation cannot be used to support [an] adverse credibility finding."); *Lopez-Reyes v. I.N.S.*, 79 F.3d 908, 912 (9th Cir. 1996) (explaining that an IJ must offer a specific and cogent reason for his adverse credibility determination and that "conjecture is not a substitute for substantial evidence"). Insofar as the IJ relied upon Zhi's

entry visa to conclude that Zhi married solely to remain in the country, she impermissibly based her conclusions on "speculation and conjecture," instead of seeking an explanation that might have clarified the matter.

Last, and most important, the IJ did not give any consideration to Zhi's testimony that Santos never filed a visa petition for him. This proof-in-the-pudding fact undermines the IJ's assumption that Zhi married Santos to stay in the United States. As with the business receipts, the IJ violated her duty to consider and address "relevant evidence that tends to contravene a conclusion that a given factor undermines credibility." *See Shrestha*, 590 F.3d at 1044.

The IJ committed several errors in her treatment of Zhi's marriage to Santos. On remand, the BIA and IJ must consider Zhi's explanation for why his marriage ended after sixteen months, provide Zhi with an opportunity to explain his visa decision, and take into account the probative fact that Santos did not file a visa petition.

## C.

We next address the third and final basis for the decision below: Zhi's failure to submit corroborative evidence. Under the REAL ID Act, "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii). The Real ID Act thus allowed the IJ to demand that Zhi provide corroborative evidence to meet his burden of proof. The BIA affirmed the IJ's ruling that Zhi "has not submitted reasonably available corroborative

evidence to substantiate his claim of an objective fear of persecution." Specifically, the IJ found it persuasive that Zhi did not provide letters or information from the Falun Gong practitioner who used Zhi's bookstore, other Falun Gong practitioners who purchased books there, or Falun Gong officers living in Guam or Saipan.

Zhi argues that he was "never put on notice" that he needed to produce the corroborative evidence identified by the IJ in her oral decision and was not given an opportunity to explain his failure to do so.[5] In *Ren*, we held that the IJ must provide an otherwise credible applicant with "notice and an opportunity to either produce the evidence or explain why it is unavailable."[6] 648 F.3d at 1090–92 & n.13. The court based its reasoning on a plain reading of the statute's "future-oriented" text. *Id.* at 1091. In particular, we determined that the following three clauses dictate that the IJ must provide

---

[5] The government argues that we do not have jurisdiction to hear this argument because Zhi did not raise the argument before the BIA. Although Zhi did not expressly raise the issue of notice in his brief to the BIA, he did argue to the BIA that "the IJ's adverse credibility finding must be set aside" and that his fear of returning to China was "also corroborated by letters from his sister and mother." With this argument, Zhi challenged the IJ's overall credibility determination and denial of his claims for asylum and withholding of removal. The "notice" requirement is a sub-part of that overall determination, and we therefore have jurisdiction over this issue. *See Ren*, 648 F.3d at 1084.

[6] Other circuits that have addressed whether an IJ must provide notice before requiring corroboration have split on the issue. In *Ren*, we aligned with the Third Circuit's decisions in *Chukwu v. Attorney Gen. of U.S.*, 484 F.3d 185, 192 (3d Cir. 2007) and *Toure v. Attorney Gen. of U.S.*, 443 F.3d 310, 324 (3d Cir. 2006). The Second and Seventh Circuits have reached the opposite conclusion. *See Liu v. Holder*, 575 F.3d 193, 198 (2d Cir. 2009); *Rapheal v. Mukasey*, 533 F.3d 521, 530 (7th Cir. 2008).

notice: First, the requirement that an applicant "*should* provide evidence*," not that he "should *have* provided evidence"; second, the phrasing that evidence "must *be* provided," rather than "must *have been* provided"; and third, the final clause concerning an applicant who "does not have" and "cannot reasonably attain" corroborating evidence. *Id*. at 1091–92. Because "the grammatical structure of the controlling clause makes the provision's meaning absolutely clear," *id.* at 1091, we gave effect to the "unambiguously expressed intent of Congress" that the IJ must provide notice and an opportunity to the applicant of the corroborative evidence necessary to carry the applicant's burden of proof, *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). Further, we explained that the canon of constitutional avoidance favors the notice requirement because the Fifth Amendment right to a "full and fair hearing" provides the applicant with "a reasonable opportunity to present evidence on his behalf." *Ren*, 648 F.3d at 1092 (internal quotations and citations omitted).

Applying *Ren* here, we hold that the IJ erred because she did not provide notice to Zhi that he was required to present the corroborative evidence she referred to in her decision. Nor did the IJ give Zhi an opportunity to explain why such evidence might be unavailable.

This case illustrates well the importance of *Ren*'s holding. The record suggests that Zhi's sources put themselves at risk of persecution to deliver the letters he presented to the IJ. His mother explained that government officials threatened her and are monitoring her outgoing mail. Zhi's father told him never to contact his parents again. And, Ming, Zhi's friend who mailed his mother's letters in secrecy to avoid government interception, is so concerned about being

persecuted himself that he told Zhi that he could no longer provide him with assistance. If the Chinese government has placed these individuals surrounding Zhi under a close eye, it surely follows that the actual practitioner of Falun Gong who stored materials in the bookstore would face serious risk if he provided a written statement to Zhi that amounted to an admission of guilt in China. Further, even if Zhi were able to obtain such a statement, the Falun Gong practitioner may not be able to send it "in the same manner as the letters from his family and friends," as the BIA presumed was possible, because Zhi's parents and Ming have asked Zhi not to contact them again. In sum, it would be a tragic irony if an applicant for asylum seeking shelter from government persecution was required to put others at imminent risk of the same government persecution to establish the viability of his application. *Cf. Zhou v. Gonzales*, 437 F.3d 860, 866 (9th Cir. 2006) (holding that it was impermissible for the IJ to give diminished weight to warrants because they were faxed when the applicant's family would have faced criminal prosecution for sending the originals).

To be clear, Zhi does not argue on appeal that the requested corroborative evidence is unavailable, and we do not so hold. Indeed, there may be ways for Zhi to access the information the IJ requests.[7] We recount these facts only to underline the difficulty of Zhi's situation and the purpose that notice and opportunity will serve. The REAL ID Act requires, as we recognized in *Ren*, that the IJ provide Zhi with an opportunity to navigate the risks and logistical complexity

---

[7] For instance, Zhi's sister mailed her letter directly to Zhi and did not express any fear that she faced government persecution for corresponding with him. She may be able to assist in sending additional information to Zhi without facing serious risk of persecution.

in obtaining the requested corroborative evidence or, in the alternative, an opportunity to explain why it is not reasonably available.

## III.

We hold that the BIA and IJ erred in arriving at their adverse credibility determination. They must revisit the adverse credibility determination in light of this opinion. *See id.* If additional corroborative evidence is deemed necessary for Zhi to carry his burden of proof, then the notice requirements in *Ren* apply. For the reasons stated above, we grant Zhi's petition and remand for further proceedings consistent with this opinion.

**PETITION GRANTED and REMANDED.**