**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

SEP 24 2015

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| KARAMJIT SINGH; SUKHBIR KAUR; ABHAY JEET SINGH, | No. 12-71323 |
| Petitioners, | Agency Nos. A89-299-575<br>A89-299-576<br>A89-299-577 |
| v. | |
| LORETTA E. LYNCH,* Attorney General, | MEMORANDUM** |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 13, 2015
San Francisco, California

Before:     REINHARDT, TASHIMA, and CALLAHAN, Circuit Judges.

Karamjit Singh; his wife, Sukhbir Kaur; and their son, Abhay Jeet Singh[1],

natives and citizens of India, seek review of the Board of Immigration Appeals'

---

\*     Loretta E. Lynch is substituted for her predecessor, Eric H. Holder, Jr., as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

\*\*     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[1]     The latter two are derivative petitioners to Karamjit Singh.

("BIA") decision affirming an Immigration Judge's ("IJ") denial of Singh's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252. We review factual findings for substantial evidence, *Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014). Substantial evidence does not support the BIA's and IJ's adverse credibility determinations. We therefore grant the petition for review.

Singh testified that he was arrested three times in India because of his membership in the Khalra Mission Committee, a human rights organization that advocated a separate Sikh nation of Khalistan.

The BIA rejected the IJ's reliance on Petitioner's demeanor as a basis for the adverse credibility determination, but accepted five of the IJ's credibility reasons for denying Petitioner's applications. We address each ground below.

**1.** Whether Petitioner was hung upside down during his first arrest. Even the government agrees that this portion of the record is rife with translation difficulties. It is clear that any inconsistency in Petitioner's answers were due to translation difficulties. When those difficulties were cleared up, Petitioner's answers were acceptable.

**2.** Whether Petitioner's son was present at his second arrest. When asked

whether his son was present at his June 14, 2006, arrest, Petitioner answered in the affirmative. When reminded, however, that his son was not born until July 8, he changed his answer. What is the materiality of whether his infant son was or was not present? What difference does it make that his son was born before or a few weeks after his second arrest? The question is trivial.

3. <u>The time of Petitioner's first and third arrest</u>. Petitioner testified that his first arrest occurred in the morning, but stated in his asylum declaration that he was arrested in the evening. Similarly, he testified that his third arrest occurred in the evening, but his declaration states that it happened at noon. He corrected both answers that he gave on cross-examination. Do mistakes in recounting the details of his three arrests make any difference? We have previously recognized "that victims of abuse often confuse the details of particular incidents, including the time or dates of particular assaults and which specific actions occurred on which specific occasion." *Ren v. Holder*, 648 F.3d 1079, 1085-86 (9th Cir. 2011) (internal quotation marks omitted).

**4.** <u>Whether Petitioner's mother can sign her name</u>. Petitioner testified that his mother was illiterate and could not sign her name. He changed his testimony when confronted with an affidavit (which Petitioner introduced) signed by his mother. It would be a rare occasion when a housewife and mother in rural India

would be called upon to sign any document, and it may be that Petitioner never saw his mother sign anything. No one contests that she's illiterate. What purpose would Petitioner have to lie about this subject? In fact, what is its relevance? Any inconsistency is trivial.

**5.** <u>The hospital records</u>. The BIA viewed the hospital records as suspicious because it considered the date in the "Date" block at the head of the record to be the date the letters were written. This date precedes Petitioner's treatment dates; thus, the suspicion: Under this interpretation it would appear that the letters were written before the treatment took place. But there is another, equally plausible interpretation: That "Date" is the date of Petitioner's admission to the hospital. This was Petitioner's testimony. There is no inconsistency.

The inconsistencies the BIA and IJ relied on are either non-existent or trivial, and thus do not constitute substantial evidence in support of the BIA's and IJ's adverse credibility determinations. *See Zhi*, 751 F.3d at 1091 (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1043-44 (9th Cir. 2010) (adverse credibility finding cannot be based only on "utterly trivial" inconsistencies that do not bear on a petitioner's veracity "under the total circumstances")). In sum, the BIA's and IJ's adverse credibility determinations are not based on substantial evidence.

The petition for review is granted and the case is remanded to the BIA for a

determination whether, accepting Petitioner's testimony as credible, Singh is eligible for asylum, withholding of removal, or relief under the CAT.

**PETITION GRANTED and REMANDED.**

*Singh v. Lynch*, No. 12-71323

CALLAHAN, Circuit Judge, dissenting

I respectfully dissent because I find the BIA's adverse credibility finding to be supported by substantial evidence.

The BIA provided five reasons in support of its adverse credibility finding: (1) inconsistencies in Petitioner's testimony regarding whether he was hung upside down during the first arrest, (2) inconsistencies in Petitioner's testimony regarding whether his son was present at the second arrest, (3) inconsistencies in Petitioner's testimony regarding the time of day of his first and third arrests, (4) inconsistencies in Petitioner's testimony regarding whether his mother can sign her name, and (5) the suspiciousness of the hospitalization records corroborating Petitioner's testimony.

While some of these reasons, standing alone, might be insufficient to justify an adverse credibility finding, others are sound and together are persuasive. In particular, Singh's inconsistent testimony regarding whether he was hung upside down during his first arrest and whether his son was present during his second arrest constitutes substantial evidence that Singh lacks credibility. The presence of one's child at the scene of one's arrest is not a detail that is likely to be forgotten. Rather, the detail is likely to be a vivid aspect of the fear and humiliation attendant

1

to the arrest.  Similarly, whether one was hung upside down by the police is not something likely to be misremembered.  These inconsistencies cannot be dismissed as the product of translation problems, even if the cold record before us arguably shows that explanation to be conceivable.  Rather, "to overturn an IJ's adverse credibility determination, we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it."  *Lianhua Jiang v. Holder*, 754 F.3d 733, 739 (9th Cir. 2014) (alternation in original).

Other evidence also supports the IJ and BIA's adverse credibility finding.  For example, Singh could not describe in any detail the purpose of the Khalra Mission Committee, even though his alleged membership with that organization was the basis of his alleged persecution by police in India.  Because the BIA's decision is supported by substantial evidence, I would deny Singh's petition as required by the REAL ID act.