**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 28 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

YANXIA YIN,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General,

Respondent.

No. 12-73246

Agency No. A088-272-310

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 11, 2015
Pasadena, California

Before:    PREGERSON, TASHIMA, and CALLAHAN, Circuit Judges.

Yanxia Yin, a native and citizen of the People's Republic of China, seeks

review of the Board of Immigration Appeals' ("BIA") decision affirming an

Immigration Judge's ("IJ") denial of her application for asylum, withholding of

removal, and protection under the Convention Against Torture ("CAT"). We have

jurisdiction under 8 U.S.C. § 1252. We review factual findings for substantial

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

evidence, and we grant the petition for review and remand to the BIA for further proceedings.

Yin contends that the Chinese government arrested, interrogated, and beat her because she protested the government's forcible taking of her property, the Huamao Building, without adequate compensation. In making its adverse credibility determination, the BIA relied on three grounds cited by the IJ. Substantial evidence does not support these grounds.

**1.** *Yin's residence in China*

Yin testified that she resided at the Huamao Building in China, but her household register lists a different address. Under the totality of the circumstances, the fact that the household register lists a different address is not "a legally significant discrepancy." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1092 (9th Cir. 2014). Yin submitted a property title for the Huamao Building and provided detailed and consistent testimony regarding her ownership of the building. Neither the IJ nor the BIA questions whether Yin actually owns the property.

Yin further testified that she intentionally registered her mother-in-law's property as the address of record because married couples are required to register with property under the husband's family. This is a reasonable and plausible explanation for the perceived discrepancy, and the IJ and BIA erred by failing to

2

provide a "specific and cogent reason" for rejecting it. *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011).

**2.** *Yin's employment history*

Yin testified that she worked as a nurse at the Honghui Hospital until she left China in 2007. Yin's asylum application, on the other hand, states that she worked at Honghui Hospital only until 2004, then worked at a different hospital — Huaqiao Hospital — from 2004 to 2006. The BIA also pointed out that the household register, which was issued in 2001, indicates that Yin was employed as a statistician for a rubber factory.

Yin offered a reasonable explanation for the inconsistency with the household register: Yin, who worked as a statistician before obtaining her nursing license in 1983, had originally registered with her former occupation, and the government never updated this information. Yin submitted both her nursing school diploma and graduation certificate from medical college. Taking the record as a whole, there is no question that Yin was a nurse in China.

Moreover, Yin's occupation is not material or even relevant to her claim. Whether Yin worked as a nurse at one hospital continuously between 1983 and 2007 or at a different hospital during the two years prior to coming to the United States is trivial and "under the total circumstances [has] no bearing on [Yin's]

3

veracity." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010). Likewise, whether Yin previously worked as a statistician is irrelevant.

**3.** *Omission of Mrs. Liu's death*

In Yin's declaration and direct testimony, she stated that Mr. Liu, her neighbor, was beaten to death but did not mention Mrs. Liu's death. In response to the government's inquiry on cross-examination, Yin confirmed that Mrs. Liu died from shock several days after hearing that her husband had died. Yin's failure to raise this information initially does not support the adverse credibility determination. The later-disclosed information was wholly consistent with Yin's prior testimony that Mrs. Liu fainted upon hearing of her husband's death. This omission is not probative of Yin's credibility, as Yin would have only bolstered her claim by including Mrs. Liu's death. *See Lai v. Holder*, 773 F.3d 966, 974 (9th Cir. 2014) ("This is not a case where contradictory or even impeaching information came out; rather, it was information consistent with Lai's own claimed experiences that would have helped his claim had he brought it out himself."). Finally, Yin gave a reasonable explanation for the omission: she explained that Mrs. Liu's death was not directly caused by the forced eviction, and that the focus of Yin's testimony was Mr. Liu's death at the hands of the demolition administrative office.

In sum, substantial evidence does not support the BIA's grounds for the adverse credibility determination. Although we only evaluate portions of the IJ's adverse credibility finding that the BIA relied on, we further "note that the other portions of the IJ's decision also would fail to support the adverse credibility finding." *Lai*, 773 F.3d at 974 n.2; *see also Tekle v. Mukasey*, 533 F.3d 1044, 1051 n.3 (9th Cir. 2008). When, as here, the agency relies on the lack of corroboration as part of the overall credibility determination, but we reject "each of the IJ's other reasons — besides lack of corroboration — for the adverse credibility finding[,] . . . the applicant, being otherwise credible, is entitled to notice that he needs to produce corroborative evidence and an opportunity to either produce the evidence or explain why it is unavailable." *Lai*, 773 F.3d at 976 (citation omitted). In making the adverse credibility finding, the IJ and the BIA relied on Yin's failure to provide corroborating evidence but did not provide her with the requisite notice and opportunity to respond. Accordingly, the petition for review is granted and the case is remanded to the BIA for a determination of whether, accepting Yin's existing testimony as credible, *see Tekle*, 533 F.3d at 1055–56, Yin is eligible for asylum, withholding of removal, or relief under CAT.

**PETITION FOR REVIEW GRANTED; REMANDED.**