**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SVETLANA STEPANYAN, <br><br> Petitioner, <br><br> v. <br><br> JEFFERSON B. SESSIONS III, Attorney General, <br><br> Respondent. | No. 14-71891 <br><br> Agency No. A099-896-350 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued May 19, 2017 Submitted August 24, 2017
San Francisco, California

Before: CLIFTON and FRIEDLAND, Circuit Judges, and RICE,[**] Chief District Judge.

Svetlana Stepanyan, a native and citizen of Armenia, petitions for review of

the denial of her application for asylum, withholding of removal, and relief under

the Convention Against Torture (CAT). We deny the petition with respect to the

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Thomas O. Rice, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

application for asylum and withholding of removal, but we vacate and remand the CAT claim for further review.

## I.    Background

Because the Immigration Judge determined that Stepanyan was credible, we assume that her testimony and declaration are true. *See Navas v. INS*, 217 F.3d 646, 657 (9th Cir. 2000).

Stepanyan testified that she worked as a journalist and editor at a TV station in Armenia, where she was responsible for approving news broadcasts. The owner and operator of the station, her direct superior, was a prominent member of an opposition political party and was critical of the Armenian government. In 2006, an agent of the Armenian National Security Service (NSS) recruited Stepanyan to become an informant against the opposition party and the TV station's owner. She initially refused, but was coerced into helping the NSS by threats and an involuntary overnight detention.

The NSS eventually became dissatisfied with Stepanyan's efforts, and after she refused to help any longer, said the old regime was gone, and told them she was not their "puppet," the agent threatened to use "another language" to secure her cooperation. Two days later, Stepanyan was assaulted near her apartment by "two men who looked like bandits" or "thieves," who said they would make her disappear if she did not do as she was told. Stepanyan fled to the United States.

2

After she left, her husband sent a letter to the prosecutor's office on her behalf. NSS agents and police then ransacked her house and beat her husband when he refused to help them, and they told him he would not see her again. NSS agents were again looking for her at home in Armenia as recently as the month before her asylum hearing. In the years since Stepanyan left Armenia, the TV station closed.

The IJ denied Stepanyan's petition for asylum, withholding of removal, and CAT relief. The Board of Immigration Appeals affirmed. It concluded that Stepanyan "did not demonstrate that any harm she may have experienced on account of her political opinion, even if considered in the aggregate, rose to the level of persecution." It also concluded that the possibility of future persecution was not sufficient to demand relief. The BIA considered the country conditions report, but it concluded that the report did not support Stepanyan's application; she had not proven "that any of the other reporters or journalists at her television station were persecuted." The BIA also affirmed the denial of Stepanyan's application for withholding of removal for the same reasons, and it affirmed the IJ's decision not to grant Stepanyan relief under the CAT without further explanation, although it did cite our decision in *Arteaga v. Mukasey*, 511 F.3d 940 (9th Cir. 2007). In *Artega*, we upheld the denial of CAT relief because the appellant had "failed to prove that any potential torture he might experience in El Salvador would be at the hands of the government." *Id.* at 948.

Stepanyan petitioned for review, challenging the BIA's decision on each of her three claims for relief. Because the BIA "agreed with the IJ's decision but did not adopt it," we limit our review to the BIA's written opinion. *Maldonado v. Lynch*, 786 F.3d 1155, 1160 (9th Cir. 2015) (en banc). We consider each of Stepanyan's claims in turn.

## II. Asylum

"To qualify for asylum, an applicant must show that she . . . 'is unable or unwilling to return to [her home country] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Ling Huang v. Holder*, 744 F.3d 1149, 1152 (9th Cir. 2014) (quoting 8 U.S.C. § 1101(a)(42)(A)). "We review factual findings . . . under the deferential substantial evidence standard." *Ai Jun Zhi v. Holder*, 751 F.3d 1088, 1091 (9th Cir. 2014). "We may reverse factual determinations only when 'any reasonable adjudicator would be compelled to conclude to the contrary' based on the evidence in the record." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). "Although the basis for our review is limited to the administrative record, we consider that record in its entirety, including evidence which contradicts the BIA's findings." *Mgoian v. INS*, 184 F.3d 1029, 1034 (9th Cir. 1999).

Here, the administrative record does not as a whole compel a conclusion contrary to that of the BIA, skeptical though we are of that conclusion. Although Stepanyan was assaulted outside her home, the identity and purposes of her attackers was uncertain. Nor was she harmed at the hands of the NSS during her overnight detention, and her former boss and co-workers have not been harmed, at least as far as she knows. The BIA was wrong to say that Stepanyan was never threatened—quite clearly she was, and her husband says he was even beaten by the NSS—but the threats were nonspecific and do not compel the conclusion that she was persecuted because of her political opinions. In addition, because many years have passed since Stepanyan left Armenia, no one else at the TV station has been harmed, and the TV station is no longer in service, we are not compelled to conclude that Stepanyan has a well-founded fear of future persecution. We therefore deny Stepanyan's petition for review of the BIA's decision on her asylum application.

## III.   Withholding of Removal

Because the standard for withholding of removal is "more stringent than the well-founded fear standard governing asylum," *Al-Harbi v. INS*, 242 F.3d 882, 889 (9th Cir. 2001), we also deny review of the agency's decision not to grant withholding of removal.

## IV.    The Convention Against Torture

To obtain relief under the CAT, a respondent must show she is more likely than not to be tortured by the government (or with the government's consent or acquiescence) if she is returned to her home country. *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1078-79 (9th Cir. 2015). But "an application for CAT relief need not show that he will be tortured 'on account of' any particular ground." *Cole v. Holder*, 659 F.3d 762, 770 (9th Cir. 2011).

As in our review of a claim for asylum, factual findings underlying the determination that an applicant is not eligible for relief under the CAT are reviewed for substantial evidence. *Id.* Unlike our review of a claim for asylum, however, when reviewing a claim for CAT relief, "*all* evidence relevant to the possibility of future torture *shall be* considered." *Id.* (emphasis added) (quoting 8 C.F.R. § 1208.16(c)(3)). "[W]here there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence." *Id.* at 771-72. For that reason, we remand petitions when the agency has not considered relevant evidence. *See, e.g.*, *Pirir-Boc v. Holder*, 750 F.3d 1077, 1085-86 (9th Cir. 2014); *Madrigal v. Holder*, 716 F.3d 499, 509 (9th Cir. 2013); *Cole*, 659 F.3d at 771-73; *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705-06 (9th Cir. 2010).

Here, the BIA made one error and one omission that bear directly on the possibility that Stepanyan will face torture at the hands of the Armenian government. First, the BIA stated incorrectly that Armenian government agents had not threatened Stepanyan. As noted above, an NSS agent told her "that they can do everything they want with me and nobody would ever find out," and when she eventually refused to help the NSS any longer, the agent told her that he would have to persuade her with "another language." Second, the agency did not address the evidence that officers beat Stepanyan's husband after he sent a letter to a local prosecutor on her behalf, and that they told him he would never see her again. It is also unclear whether the BIA considered the country conditions evidence in evaluating the CAT claim.

Where, as here, the BIA has apparently not considered all evidence bearing on a CAT claim, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).[1]

---

[1] Although it could be rational to predict, as the dissent does, that the BIA will again deny CAT relief on remand, our case law instructs us not to assume how the BIA will decide the claim with the benefit of a complete view of the evidence and record, at least when it is possible the BIA could come to a different conclusion. Here, the combination of threats to Stepanyan's life and country report evidence of treatment of opposition journalists could lead the BIA to conclude that Stepanyan

**DENIED in part, VACATED in part, and REMANDED in part.**

---

would face sufficient risk of torture or death if returned to Armenia to warrant CAT relief. *See, e.g.*, *Pirir-Boc*, 750 F.3d at 1080, 1085-86 (remanding a CAT claim where the petitioner had been outspoken in opposition to a group that had beaten and threatened him with death); *Aguilar-Ramos*, 594 F.3d at 703-06 (remanding to allow the BIA to consider country reports that might show the petitioner was in particular danger of torture or death on return to his home country).

This result of remanding the CAT claim but not the asylum or withholding claim is admittedly an odd one on the whole, but it appears to be compelled by the precedents cited above: On the one hand, we must deny relief in the contexts of asylum and withholding of removal unless the administrative record presented to the agency *compels* a result contrary to the agency's decision. *See Mgoian*, 184 F.3d at 1034. And on the other, we remand claims for CAT relief if the agency has "misstated the record" and has not mentioned "potentially dispositive evidence." *See Cole*, 659 F.3d at 771-72.

FILED

AUG 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CLIFTON, Circuit Judge, concurring in part and dissenting in part:

I join Parts II and III of the majority disposition in denying the petition in connection with Stepanyan's claims for asylum and withholding of removal. As to the claim for relief under the Convention Against Torture (CAT), however, I respectfully dissent. The petition should be denied as to that claim as well.

I agree with the majority that the evidence does not compel the conclusion that Stepanyan has a well-founded fear of future persecution. It is, therefore, illogical to me to entertain the possibility that Stepanyan made a persuasive case that she is more likely than not to be tortured by the government (or with the government's consent or acquiescence) if she is returned to Armenia, the finding that would be required to support CAT relief, on the premise that the BIA might have reached such a conclusion if only it had considered all of the evidence.

The mistreatment that Stepanyan said that she suffered before she left that country did not, in my view, rise to the level of "torture." The BIA already concluded that the harm Stepanyan suffered did not amount to "persecution," and we agree that the evidence did not compel a different conclusion. "[T]orture is more severe than persecution and the standard of proof for the CAT claim is higher

than the standard of proof for an asylum claim." *Nuru v. Gonzales*, 404 F.3d 1207, 1224 (9th Cir. 2005). *See* 8 C.F.R. § 208.18(a)(2) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."). Nothing suggests that she is at greater risk today than she was then, especially as many years have passed, the TV station is no longer in operation, and nobody else connected with that station is known to have been harmed, either at the time or since then.

The majority nonetheless grants the petition and remands for further proceedings because the BIA has allegedly not "considered" all of the relevant evidence. But the evidence allegedly not fully considered would still not establish that, more likely than not, Stepanyan would be tortured if returned to Armenia. Even the precedent primarily relied upon by the majority to support its conclusion acknowledged that the BIA is not required to discuss each piece of evidence submitted. *Cole v. Holder*, 659 F.3e 762, 772 (9th Cir. 2011). In that decision we expressed concern for a failure "to mention highly probative or potentially dispositive evidence." *Id*. Requiring discussion of evidence that would not change the ultimate result does not justify remand for further consideration.

The regulation that *Cole* purported to construe to require the BIA to

2

demonstrate its consideration of evidence is 8 C.F.R. § 1208.16(c)(3). It provides:

> In assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal, all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
>
> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv) Other relevant information regarding conditions in the country of removal.

The evidence that prompts the majority to grant Stepanyan's petition in part and to remand for further proceedings is not evidence of that nature. In particular, there was no "evidence of past torture inflicted upon the applicant."

Given that the Immigration Judge and the BIA denied relief in the form of asylum or withholding of removal, it does not take much power of prognostication to foresee that Stepanyan will not be granted relief under CAT. Remanding this case to an agency that is already enormously backlogged is both pointless and wasteful. I respectfully dissent.

FILED

AUG 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

RICE, Chief District Judge, dissenting, concurring with the result of section IV:

Because the BIA failed to consider significant evidence, the Court should grant the petition and remand all three claims. "Within broad limits the law entrusts the agency to make the basic asylum eligibility decision here in question. In such circumstances a 'judicial judgment cannot be made to do service for an administrative judgment.'" *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (internal citations omitted) (quoting *SEC v. Chenery Corp.,* 318 U.S. 80, 88 (1943)). "In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency. If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case." *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (citing *Orlando Ventura,* 537 U.S. at 16–17).[1] Accordingly, unless harmless, when the BIA fails to provide a reasoned explanation or fails to consider evidence, the proper course is to remand to the agency for additional consideration and explanation. *See Hu v. Holder*, 652 F.3d 1011, 1020 (9th Cir. 2011); *Vitug v.*

---

[1] *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("the court is powerless to affirm . . . by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.").

*Holder*, 723 F.3d 1056, 1064 (9th Cir. 2013); *Tukhowinich v. INS*, 64 F.3d 460, 463 (9th Cir. 1995); *Yan Rong Zhao v. Holder*, 728 F.3d 1144, 1149 (9th Cir. 2013).[2]

While denying the petition for asylum and withholding of removal, the majority uses the standard for reversal, rather than the standard for remand.[3] Even recognizing the BIA's glaring mistakes, the majority undertakes a *de novo* review of the evidence and finds the entire record does not compel a contrary conclusion. That is the test for a reversal, not a remand.[4] If the agency were to properly consider all of the evidence, we cannot "state with confidence that the same decision would be made if we were to remand."[5] The majority's skepticism recognizes this doubt. The BIA only considered the overnight detention—but

---

[2] *See also* John W. Guendelsberger, Judicial Deference to Agency Decisions in Removal Proceedings in Light of INS v. Ventura, 18 Geo. Immigr. L.J. 605, 639 (2004) ("If the agency's failure to consider relevant evidence or due process violations prevented a fair hearing, a court must remand in order to permit the agency to reconsider the issue after taking into account the relevant evidence or affording a new hearing to correct due process violations.").

[3] In attempting to give deference to the agency, the majority actually takes away the agency's ability to properly decide the case.

[4] This standard imposes an undue burden on the applicant. Merely because the IJ did not properly review the evidence, the applicant is now tasked with demonstrating she met the burden of proof on a much higher standard where all reasonable inferences are in favor of denying relief.

[5] *See Xiao Ji Chen v. U.S. D.O.J.*, 471 F.3d 315, 335 (2d Cir. 2006); *Palavra v. INS*, 287 F.3d 690, 694 (8th Cir. 2002) ("To deport the [applicant] . . . is a step of great significance in their [life]. They and we deserve a better brand of fact-finding by the BIA before this step can be judicially approved.").

failed to consider the assault against Stepanyan and her husband in 1996, the

forcible kidnapping[6], the numerous and serious threats[7], the later assaults against

---

[6]    *See* fn. 8.  The IJ mentioned two men "put her in a vehicle[,]", but later states "[t]he only inconvenience it appears that she may have suffered was being held overnight at the police station."

[7]    Including the threat that her husband would not see her again.  *Artiga Turcios v. INS*, 829 F.2d 720, 724 (9th Cir. 1987) (threat via third party relevant).

Stepanyan[8] and her husband[9], the ransacking of her apartment, or the potential that

Stepanyan would be jailed for her letter about the NSS.  Remember, the BIA

---

[8]    The record compels the conclusion that the NSS was behind the assault against Stepanyan.  The events leading up to the assault support only one conclusion.  The NSS agent first approached her *on her walk home from work*, asking her to *not air news critical of the government*.  She refused.  The next day she was *forced* into a vehicle *by two men on her walk home from work*, taken to a local police station, detained overnight, and threatened (you will leave when I decide; we hope you know we can do anything we want to you and no one will find out, and if you don't want trouble you had better do what we say).  She decided she would quit her job, but her employer convinced her to stay by offering to help make it look like she was cooperating.  Her feigned allegiance was discovered months later after she authorized a story critical of the government's interests.  An hour after the story aired the NSS agent contacted her.  She tried to deny responsibility, but the agent knew "exactly" that she aired it (there were moles at the station).  Stepanyan got bold, telling the agent she was not their puppet and she would do what she thought was right; the agent told her she did not understand nice language and they would speak to her in a different language. Two days later, *on her way home from work*, *two unidentified assailants* punched her in the stomach, slapped her, cursed at her, told her to do what we tell you to do or you will disappear (while holding a knife to her face), but did not tell her to do anything else.  According to a medical report, the punch caused internal bleeding.
    No other conclusion is reasonable: (1) the assault occurred two days after the NSS said they would speak to her in "different language"; (2) the assault was similar to the previous encounters (on her walk home from work, two unidentified men); (3) the threat she would disappear matches the threat that her husband would not see his wife again; (4) Stepanyan explained why the NSS would act with anonymity ("They couldn't act openly."); (5) the country reports recount a pattern of attacks against the media by unidentified assailants; and (6) Stepanyan believed the NSS was behind the attack—although she said the assailants *looked* like thieves or hoodlums, she reported that she knew why they were there, wrote a letter to the prosecutor's office about the attack, left for the United States after the attack out of fear and at the advice of her employer, and is fighting deportation, all while leaving her family behind.
    [9]    *See Mashiri v. Ashcroft*, 383 F.3d 1112, 1120 (2004) (assault on family relevant for eligibility).

accepted the IJ's finding that she was fully credible. The BIA lightly dismissed the country reports because of an assumed lack of persecution against her co-workers and employer.[10] The evidence not considered is highly significant—even without the disputed assault.

Indeed, the record compels the conclusion that – more likely than not (and certainly at least a ten percent chance[11]) – Stepanyan will be persecuted and tortured upon removal.[12] The threats, if carried out, would clearly amount to persecution and torture. Either by death or other nefarious means, making someone disappear is definitely persecution and torture. What matters is whether the actor has the "will" and "ability" to carry out the threats. *Kaiser v. Ashcroft*, 390 F.3d 653, 658-59 (9th Cir. 2004). The NSS's "will" is evident—they have made good on past threats; and six years after she left, one month before her final

---

[10] An absence of reported abuses against other employees or her employer is of no import, *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007) (need only show "individualized risk"), especially given: (1) the widespread abuse of journalists; (2) Stepanyan was the *only employee with authority* to air news critical of the government; (3) some employees were moles, and employees would not provide information to her out of fear for retaliation; (4) her employer had been visited by the NSS and warned not to air certain material and had political connections protecting him; and (5) the station eventually lost its license.

[11] *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987) (for asylum).

[12] The record also demonstrates Stepanyan suffered past persecution – giving rise to a presumption of future persecution – and further requiring a remand. *Mamouzian v. Ashcroft*, 390 F.3d 1129, 1134 (9th Cir. 2004); *Orlando Ventura*, 537 U.S. at 18.

hearing, the NSS was still visiting Stepanyan's home in Armenia asking for her.[13]

This allays any *hope* they have lost interest.  The NSS's "ability" is demonstrated by Stepanyan's encounters and the country reports documenting flagrant abuses and censorship against journalists by the government.  The closing of the news station illustrates such reprisals—the country reports document that stations lose their license for their political speech.

---

[13]  This is not surprising given she refused, then pretended to cooperate; took a strong stand when discovered; and reported the NSS to the prosecutor's office and, now, the United States. *See Owino v. Holder*, 771 F.3d 527, 533 (9th Cir. 2014) (application material is public, giving rise to the possibility of retaliation).