**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 9 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

NAZMUL ISLAM,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    17-71250

Agency No. A202-013-750

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 10, 2022[**]
Phoenix, Arizona

Before:  PAEZ, CLIFTON, and WATFORD, Circuit Judges.

Nazmul Islam ("Islam"), a native and citizen of Bangladesh, petitions for

review of a decision by the Board of Immigration Appeals ("BIA") upholding an

immigration judge's ("IJ") denial of his applications for asylum, withholding of

removal, and relief under the Convention Against Torture ("CAT").  We have

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

jurisdiction under 8 U.S.C. § 1252.  We review an adverse credibility

determination for substantial evidence, *Ai Jun Zhi v. Holder*, 751 F.3d 1088,

1091 (9th Cir. 2014), and we grant the petition.

The BIA identified four reasons underlying the adverse credibility finding:

inconsistencies in Islam's testimony, his explanation for those inconsistencies,

problems with his testimony regarding violence perpetrated by Bangladesh

National Party ("BNP"), and the vagueness of his testimony about his time in

hiding.[1]  None of these reasons is supported by substantial evidence.

First, none of Islam's statements were actually inconsistent.  The agency

identified "discrepancies" in Islam's testimony about hanging up posters for the

BNP, attending political rallies, and recruiting for the party.  Islam consistently

explained, however, that he hung posters on the wall of the BNP office but did not

go out and hang them elsewhere, that he attended BNP meetings but not rallies,

and that he did not encourage other people to join the party.  While Islam

"admitted" to changing his testimony, it is clear from the transcript that he was

simply confused about the questions he was being asked.  Indeed, at several points,

---

[1] Because "the BIA reviewed the IJ's credibility-based decision for clear error and relied upon the IJ's opinion as a statement of reasons but did not merely provide a boilerplate opinion," we review "the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's . . . decision in support of those reasons."  *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) (internal quotation marks and citation omitted).

Islam attempted to answer the questions more fully, but the IJ insisted that he confine himself to a yes or no answer. That was not always possible, especially in the face of the IJ's compound questions. Islam's admissions are therefore evidence not of any inconsistency in his testimony, but of the lack of clarity in the questions he was being asked.

To the extent that the IJ suggested that Islam testified untruthfully, however, that conclusion is not supported by the record. In the context of the full exchange between Islam and the IJ, the record shows that Islam attempted to explain that he was struggling to navigate the questions that the IJ was asking. At no point did he admit to having testified falsely. Instead, he told the IJ that he found it difficult to answer the questions with a clear "yes" or "no" and without any opportunity for further explanation, explaining that any perceived inconsistency may have come from his attempt to follow the flow of the complicated questions.

Nor was Islam's testimony that he was unaware of violent BNP strikes inconsistent or implausible. Islam repeatedly told the IJ that he was aware of BNP strikes but that he was not aware that they were violent. The IJ's conclusion that this lack of knowledge was unlikely given the strike's size, location, and importance was based on "speculation and conjecture," which is not sufficient to support an adverse credibility finding. *Ai Jun Zhi*, 751 F.3d at 1093. Indeed, Islam

3

offered several reasons he would not know much about what occurred during the strike, including that he did not have access to news reports and that he had been working at only one of the party's many offices within the district in which the strike occurred. Because the IJ failed to address these reasonable explanations for the testimony she labeled implausible, that finding was not supported by substantial evidence. *See Yan Xia Zhu v. Mukasey*, 537 F.3d 1034, 1039-40 (9th Cir. 2008).

Finally, while Islam's testimony about his time in hiding was sparse, he did in fact provide some details about where he stayed, with whom, and for how long. In light of the trauma he suffered and the lack of any other evidence in the record that would undermine his credibility, the BIA's argument that he should have been more specific is not enough to support the adverse credibility determination. *See Lai*, 773 F.3d at 971.

We grant the petition and remand to the BIA for further proceedings consistent with this disposition.

**PETITION FOR REVIEW GRANTED; REMANDED.**